No. 21-5024

# United States Court of Appeals for the Tenth Circuit

---

## ARTHUR COPELAND, et al.,

*Plaintiffs-Appellees*,

v.

## C.A.A.I.R., et al.,

*Defendants-Appellants.*

---

Appeal from the United States District Court for the
Northern District of Oklahoma
No. 17-CV-564-TCK-JFJ — Honorable Terence C. Kern, District Judge

---

## BRIEF OF DEFENDANTS-APPELLEES

---

Denelda L. Richardson
Randall E. Long
Nicholas J. Foster
RHODES HEIRONYMUS JONES
  TUCKER & GABLE, PLLC
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone: (918) 582-1173

*Counsel for Appellees CAAIR, Don
Wilkerson, and Janet Wilkerson*

John Henry Rule
Christopher S. Thrutchley
John R. Russell
Justin A. Lollman
GABLEGOTWALS
110 N. Elgin Ave., Ste 200
Tulsa, Oklahoma 74120
Telephone (918) 595-4800

*(Additional counsel and party
representations listed on inside cover)*

ORAL ARGUMENT NEITHER REQUESTED NOR OPPOSED

Amy M. Stipe
GABLEGOTWALS
One Leadership Square, Ste. 1500
211 North Robinson Ave.
Oklahoma City, OK 73102
Telephone (405) 235-5500

*Counsel for Appellees Simmons Foods,*
*Inc. and Simmons Pet Food Inc.*

## CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1 and 28(b), Defendants-Appellees Simmons Foods, Inc. and Simmons Pet Food, Inc. are both Arkansas corporations with no parent corporations. CAAIR, Inc. is an Oklahoma non-profit corporation with no parent corporations. No publicly held company owns 10 percent or more of any Appellee's stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS .......................................................... ii

TABLE OF AUTHORITIES ...................................................... v

PRIOR OR RELATED APPEALS ................................................ x

I.    JURISDICTIONAL STATEMENT ........................................... 1

II.   STATEMENT OF THE CASE .............................................. 1

    A.    The CAAIR Program ............................................... 1

    B.    The *Copeland* Lawsuit ............................................ 3

    C.    Defendants' *Rooker-Feldman* Motion ................................ 4

        1.    Brad McGahey ................................................ 4

        2.    Craigory Blue ................................................ 6

        3.    Dwayne Moss ................................................ 9

        4.    Arthur Copeland .............................................. 11

    D.    Plaintiffs' Response to Defendants' *Rooker-Feldman* Motion ................................................................ 14

    E.    Defendants' Reply in Support of Their *Rooker-Feldman* Motion ...................................... 15

    F.    The District Court's Opinion and Order ............................. 16

    G.    The District Court Denies Plaintiffs' Rule 59(e) Motion ..................................................... 16

III.  SUMMARY OF THE ARGUMENT ........................................ 17

IV.   STANDARD OF REVIEW ............................................... 20

V.    ARGUMENT ................................................................ 20

    A.    Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine................................................. 20

        1.    The district court did not clearly err in finding that Plaintiffs' state-court judgments caused their claimed injuries. ................................................... 23

        2.    Plaintiffs' mere allegation that Defendants caused their injuries is not controlling for *Rooker-Feldman* purposes................................................... 28

        3.    Plaintiffs' fraud-on-the-court argument is both irrelevant and unsubstantiated. ...................... 29

            a.    A mistake of fact by Plaintiffs' state sentencing courts—whether the result of fraud or a simple mistake—cannot establish federal jurisdiction. ........................................ 30

            b.    Even if a state court's mistaken belief that CAAIR was a treatment program could establish federal jurisdiction (and it can't), Plaintiffs failed to present evidence establishing that theory by a preponderance standard ..................................... 32

        4.    The district court properly defined Plaintiffs' claimed injuries. ......................................... 36

        5.    The district court did not misconstrue the state-court orders. ...............................................37

        6.    The district court did not err in finding Plaintiffs' requested relief would "undo" the state-court orders sending them to CAAIR. ........................................ 39

B.    The district court did not err in dismissing all
      Plaintiffs. ............................................................................ 42

C.    The district court did not err by incorporating
      legal analysis from Defendants' motion into
      its Opinion and Order. ....................................................... 45

CONCLUSION ........................................................................... 49

CERTIFICATE OF COMPLIANCE ........................................ 51

CERTIFICATE OF DIGITAL SUBMISSION ...................... 51

CERTIFICATE OF SERVICE .................................................. 52

# TABLE OF AUTHORITIES

*Cases:*

*Bisbee v. McCarty*,
    3 Fed. App's 819 (10th Cir. 2001) ........................................ 30

*Bolden v. City of Topeka*,
    441 F.3d 1129 (10th Cir. 2006) .......................................... 28

*Bradshaw v. Gatterman*,
    658 Fed. App'x 359 (10th Cir. 2016) .................................. 30

*Bright v. Westmoreland Cty.*,
    380 F.3d 729 (3d Cir. 2004) ............................................... 48

*Brown v. Taylor*,
    677 Fed. App'x 924 (5th Cir. 2017) ................................... 39

*Cahill v. Am. Family Mut. Ins. Co.*,
    610 F.3d 1235 (10th Cir. 2010) .......................................... 44

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
    408 F.3d 1349 (11th Cir. 2005) .......................................... 22

*City of Albuquerque v. Soto Enterprises, Inc.*,
    864 F.3d 1089 (10th Cir. 2017) .......................................... 42

*Collins v. CFAM Fin. Servs., LLC*,
    668 Fed. App'x 333 (10th Cir. 2016) .................................. 30

*Concrete Pipe & Prod. Of California, Inc.*,
    *v. Constr. Laborers Pension Tr. For S. California*,
    508 U.S. 602 (1993) .......................................................... 24

*Conrad v. United States*,
    447 F.3d 760 (9th Cir. 2006) ............................................. 45

*Curley v. Perry*,
    246 F.3d 1278 (10th Cir. 2001) .................................... 43, 44

*D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*,
　576 Fed. App'x 759 (10th Cir. 2014) .................................................. 46

*DiLeo v. Ernst & Young*,
　901 F.2d 624 (7th Cir. 1990) .............................................................. 46

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
　438 U.S. 59 (1978) .............................................................................. 22

*Ellis v. CAC Fin. Corp.*,
　6 Fed. App'x 765 (10th Cir. 2001) ...................................................... 30

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
　544 U.S. 280 (2005) ............................................................................ 21

*Farris v. Burton*,
　686 Fed. App'x 590 (10th Cir. 2017) .................................................. 30

*Flying J Inc. v. Comdata Network, Inc.*,
　405 F.3d 821 (10th Cir. 2005) ...................................................... 46, 48

*Fochtman v. DARP, Inc.*,
　2019 WL 4740510 (W.D. Ark. 2019) .................................................. 31

*Goodwin v. Hatch*,
　781 Fed. App'x 754 (10th Cir. 2019) .................................................. 30

*Griffen v. City of Oklahoma City*,
　3 F.3d 336 (10th Cir. 1993) ................................................................ 47

*Hoblock v. Albany Cty. Bd. Of Elections*,
　422 F.3d 77 (2d Cir. 2005) ............................................................ 28, 40

*Holt v. United States*,
　46 F.3d 1000 (10th Cir. 1995) ...................................................... 20, 29

*Iqbal v. Patel*,
　780 F3d 728 (7th Cir. 2015) ......................................................... 30, 31

*Jackson v. Fed. Exp.*,
　766 F.3d 189 (2d Cir. 2014) ............................................................... 45

*Johnson v. City of Shorewood*,
    360 F.3d 810 (8th Cir. 2004) ............................................................ 31

*Johnson v. Orr*,
    551 F.3d 564 (7th Cir. 2008)................................................. 28, 29, 40

*Kenmen Eng'g v. City of Union*,
    314 F.3d 468 (10th Cir. 2002) ..................................................... 21, 22

*Kline v. Biles*,
    861 F.3d 1177 (10th Cir. 2017) ................................................... 21, 24

*LeCates v. Barker*,
    242 F.3d 389 (10th Cir. 2000) ............................................................ 30

*MacIntyre v. JP Morgan Chase Bank, N.A.*,
    827 Fed. App'x 812 (10th Cir. 2020) .......................................... 30, 32

*Maestas v. Lujan*,
    351 F.3d 1001 (10th Cir. 2003) ......................................................... 46

*Market v. City of Garden City*,
    723 Fed. App'x 571 (10th Cir. 2017)............................ 27, 28, 39, 40, 41

*Martinez v. U.S. Olympic Comm.*,
    802 F.2d 1275 (10th Cir. 1986) ................................................... 21, 24

*Marx v. Gen. Revenue Corp.*,
    668 F.3d 1174 (10th Cir. 2011) ......................................................... 24

*McClam-Brown v. Boeing Co.*,
    142 Fed. App'x 75 (3d Cir. 2005) ...................................................... 48

*Mo's Express, LLC v. Sopkin*,
    441 F.3d 1229 (10th Cir. 2006).................................................... 20, 21

*Myers v. Wells Fargo Bank, N.A.*,
    685 Fed. App'x 679 (10th Cir. 2017) ........................................... 28, 30

*New England Health Care Emps. Pension Fund*
    *v. Woodruff*,
    512 F.3d 1283 (10th Cir. 2008) ......................................................... 47

*Paper, Allied-Indus., Chem. And Energy Workers Int'l Union*
    *v. Cont'l Carbon Co.*,
    428 F.3d 1285 (10th Cir. 2005) ..........................................................20

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ..................................................................... 36

*Richardson v. Title IV-D Agency*,
    842 F. App'x 190 (10th Cir. 2021) ...................................................... 30

*Scholastic Entm't., Inc. v. Fox Entm't Group, Inc.*,
    336 F.3d 982 (9th Cir. 2003) ............................................................. 42

*Southway v. Central Bank of Nigeria*,
    328 F.3d 1267 (10th Cir. 2003).............................................. 20, 24, 29

*Sunshine Dev., Inc. v. F.D.I.C.*,
    33 F.3d 106 (1st Cir. 1994)................................................................ 46

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006)............................................................ 30

*Taylor v. McKeithen*,
    407 U.S. 191 (1972) ........................................................................ 45

*Tso v. Murray*,
    822 F. App'x 697 (10th Cir. 2020) ...................................................... 30

*United Nat. Ins. Co. v. R & D Latex Corp.*,
    141 F.3d 916 (9th Cir. 1998) ............................................................. 47

*United States v. Camick*,
    796 F.3d 1206 (10th Cir. 2015) .......................................................... 21

*United States v. Nelson*,
    868 F.3d 885 (10th Cir. 2017)............................................................ 43

*United States v. Porter*,
    928 F.3d 947 (10th Cir. 2019)............................................................ 24

*United Stats v. Rogers*,
    2016 WL 7650583 (D. Kan. Mar. 9, 2016).................................... 44, 45

*United States v. Young*,
    236 Fed. App'x 710 (10th Cir. 2008)................................................. 33

*Washington v. Price*,
    95 F.3d 52 (5th Cir. 1996).................................................................. 45

*West v. Evergreen Highlands Ass'n*,
    213 Fed. App'x 670 (10th Cir. 2007)................................................. 30

*Westside Prop. Owners v. Schlesinger*,
    597 F.2d 1214 (9th Cir. 1979) ........................................................... 46

*Williams v. Life Sav. & Loan*,
    802 F.2d 1200 (10th Cir. 1986) ......................................................... 42

*Williams v. Sirmons*,
    299 Fed. App'x 780 (10th Cir. 2008) ................................................ 46

### *Statutes & Rules*

28 U.S.C. § 1257 ............................................................................... 21

28 U.S.C. § 1291 ................................................................................. 1

Fed. R. App. P. 26.1 .............................................................................i

Fed. R. App. P. 28...............................................................................i

Fed. R. Civ. P. 12 ......................................................................... 20, 42

Fed. R. Civ. P. 19 ......................................................................... 41, 42

Okla. Stat. tit. 43A, § 3-461 .......................................................... 33, 35

## PRIOR OR RELATED APPEALS

There are no prior or related appeals pending in this Court.

# I.   JURISDICTIONAL STATEMENT

The district court dismissed this case for lack of subject matter jurisdiction on December 10, 2020. It entered final judgment the same day. Plaintiffs moved to vacate that judgment on January 7, 2021. The court denied the motion on February 18, 2021. Plaintiffs timely appealed on March 22, 2021. As the district court correctly determined, it lacked subject matter jurisdiction over this case under the *Rooker-Feldman* doctrine. This Court has jurisdiction to review the district court's jurisdictional dismissal under 28 U.S.C. § 1291.

# II.   STATEMENT OF THE CASE

## A.   The CAAIR Program

Defendant-Appellee Christian Alcoholics and Addicts in Recovery ("CAAIR") is a residential addiction-recovery program located east of Jay, Oklahoma. Appellants' Appendix ("AA") 1108. Its mission is to help men suffering from drug and alcohol addiction to recover and become productive members of society. *Id.* It realizes this mission through a program of work training, individual and group counseling, NA and AA classes, life skill courses, and weekly Bible study and church attendance. *Id.*

CAAIR's rehabilitative model is primarily work-based; in addition to their coursework and counseling sessions, participants in the program perform work at various nearby work-providers, including Defendants-Appellees Simmons Foods, Inc. and Simmons Pet Food, Inc. (collectively "Simmons"). *Id.* This work is meant to give participants a sense of self-worth and accomplishment and

allow them to develop job skills in a structured, drug-free environment. *Id.* Simmons pays CAAIR for the work its participants perform at rates well above the applicable minimum wage. AA1110. CAAIR participants are not paid for the work they perform in the program. AA1108.

Before being admitted to CAAIR, prospective participants undergo an intensive interview process. *Id.* During that time, a CAAIR representative explains the program in detail, including what the interviewee should expect if accepted. AA1108–09. Prospective clients are required to read and sign paperwork acknowledging their understanding of the program. AA1109. In particular, a prospective client must acknowledge and agree:

- that he will "participate in all programs and activities of CAAIR, Inc. including, but not limited to, … working at a designated job site,"

- that he "is a client of CAAIR" — "not an employee,"

- that he "did not come to CAAIR, Inc. seeking work" and that "CAAIR, Inc. did not offer [him] a job,"

- that he will "not receive wages" or otherwise be paid for the work he performs in the program,

- that failure to maintain his position with an assigned work provider is considered a "major rule violation," warranting "disciplinary action up to and including discharge … from the CAAIR program,"

- that he "may be discharged from CAAIR, Inc. with or without cause … when such discharge would be in the best interest of the Center."

- that he "may voluntarily discharge [himself] from CAAIR," and

- that he is "free to leave at any time" but that he may face "consequences from the criminal justice system for the early departure."

AA1109, 1114, 1116, 1120. CAAIR similarly advises all referring authorities, including all sentencing courts, sending clients to the program. AA1109.

CAAIR does not detain its participants—participants are free to leave at any time but may, depending on their circumstances, face consequences from the criminal justice system if sent to CAAIR by court order. AA1110.

## B.    The *Copeland* Lawsuit

Plaintiffs are a group of 53[1] former state-court criminal defendants, all of whom were ordered to complete the CAAIR program in lieu of incarceration. Aplt. Br. 16–17; *see also* AA1680; *infra* note 15. In October 2017, Plaintiffs filed this lawsuit against Simmons, CAAIR, and several CAAIR officials, alleging Defendants unlawfully obtained their labor under "threat of incarceration" and that Plaintiffs were "employees" of Defendants and, thus, should've been paid minimum wage and overtime. AA91–132, 264–299, 1697–1744. In particular, Plaintiffs asserted claims for involuntary servitude, forced labor, human trafficking, RICO, unjust enrichment, and minimum wage and overtime. AA1697–1744.

---

[1] At the time the district court entered judgment, this case included 55 Plaintiffs. Plaintiffs Dexter Mackay and Gilbert Sanders, Jr. do not join in this appeal.

## C.   Defendants' *Rooker-Feldman* Motion

In November 2019, Defendants moved to dismiss the claims of Plaintiff Brad McGahey, Arthur Copeland, Craigory Blue, and Dwayne Moss for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. AA1084. In support of their motion, Defendants submitted evidence establishing the facts set forth in Part II.A, *supra*, *see* AA1089–90, 1107–49, as well as the following facts as to each Plaintiff:

### 1.   *Brad McGahey*

In September 2008, Brad McGahey was charged with one count of knowingly concealing stolen property in Marshall County District Court. AA1203. He pleaded guilty to the offense and received a five-year deferred sentence. AA1205–16. In July 2009, the district attorney moved to accelerate McGahey's deferred sentence based on a variety of probation violations. AA1217–18. The court later found that McGahey had violated the terms of his probation and set his case for sentencing. AA1219.

At sentencing, the court expressed dissatisfaction with McGahey's attitude toward probation, characterizing him as a "scofflaw"—"someone who just scoffs at the law, ignores it, until they absolutely have to obey it," someone who "tries to blow off everything and … to find the easy way out of everything." AA1254. The court then gave McGahey a choice: prison or CAAIR. AA1255. McGahey chose CAAIR:

THE COURT: .... [W]hat I'm going to do in this case is I'm going to give him a choice. Either go to a treatment center where he would stay and work even [though] he doesn't have a drug and alcohol problem.... I have CAAIR specifically in mind where he would stay a minimum of nine months or I can send him to the penitentiary. But today he'd be remanded to the custody of the county sheriff and I would ask Mrs. Rogers to line up a treatment center and we'd set off sentencing for him to go and do nine months and get up and work everyday or he can go to the penitentiary. I'm going to give him that choice if you want to talk to him.

MR. SWARTZ: I think I can make that answer for him, Your Honor. He'll go to the work center, Your Honor.

*Id.* The court went on to explain that CAAIR was a work-based program, that it was "a lot of work," and that he would "work six days a week and … go to AA and things like that at night." *Id.* The court further explained that if McGahey failed to complete the program, the court would "give him five years in the penitentiary." AA1256. Finally, the court warned McGahey, "[D]on't try to play fast and loose with [CAAIR's] rules or they'll kick you out and then you'll end up in the penitentiary if they kick you out." AA1258. McGahey indicated he understood. *Id.* The court later entered an order directing McGahey to CAAIR on March 9, 2010. AA1260.

McGahey interviewed for admission to the CAAIR program on April 15, 2010. AA1151. During that process, McGahey was advised and acknowledged, in writing, that participation in the CAAIR program entailed "[w]orking at a local job provider for 40 hours a week," AA1153, and that "[f]ailure to maintain [his] position at [his] assigned work provider" or "to follow the rules and regulations

of [his] assigned work provider" were "Major Rule Violations," AA1157. He further acknowledged that he was "not an employee of … CAAIR," "did not come to … CAAIR … seeking work," and would "receive no pay" for work performed in the program. AA1158, 1160. Finally, McGahey acknowledged that he was "free to leave at any time," *id.*, and "agree[d] to abide by all rules of [the] CAAIR [program]," AA1157.

On June 28, after approximately two months in the program, McGahey left CAAIR and was remanded to the Marshall County jail. AA1162–64, 1261. On September 21, 2010, the court entered judgment, accelerating McGahey's five-year deferred sentence. AA1262–64.

### 2.   *Craigory Blue*

In August 2013, Craigory Blue was charged with two felony counts of possession of a controlled substance (one for marijuana, the other methamphetamine) in Marshall County District Court. AA1266. He pleaded guilty to both counts as part of a plea agreement in which he agreed to complete the CAAIR program. AA1267–76. During his change-of-plea hearing, the court went over the terms of his plea agreement, including what he could expect at CAAIR. AA1295–97. The court (acting through the same judge who sentenced McGahey) stressed that CAAIR was a work-based program and that if Blue went there he would be required to "work and work hard." AA1296. The court further warned that if Blue failed to complete the program he would not "get a good sentence." AA1297. The court's colloquy with Blue is set forth below:

MR. JONES: If I may, Judge …. [Blue is] going to plead, going to go to CAAIR.[2] Basically the same deal, if he completes it, he'll get a suspended sentence.

THE COURT: Okay.

MR. JONES: He's got two counts. He'll plead to both counts.

THE COURT: All right, Mr. Blue. We just heard one of the colleagues next to you.

DEFENDANT BLUE: Yes, sir.

THE COURT: You've got to go to CAAIR.

DEFENDANT BLUE: Yes.

THE COURT: I'll say this to both of you, you don't go to CAAIR and get up [at] ten and watch Oprah or Dr. Phil or whoever else is on, Ellen or whatever T.V. shows are on. You don't that. You don't watch T.V. You may get to watch T.V., but you don't get to sleep in and twiddle your thumbs and sip lattes. You go there and you work and work hard. Have to get up early and work hard. Probably collapse into bed and say thank God I made it through this day and I'll get up and do it again. I'm not trying to scare you, but it's a great program. I've heard great things about it, but it's not going to be easy so you understand that? Both of you do?

DEFENDANT SHIPLEY: Yes, sir.

DEFENDANT BLUE: Just like home.

THE COURT: And so you understand if you do well, you should receive a favorable sentence, probably probation. If you don't complete the program, you won't get a good sentence. You understand that? And you understand it's not a specific one year program. Might be a little more, might be a little less.

DEFENDANT BLUE: Yes, sir.

---

[2] The court reporter referred to CAAIR as "CAIIR." The quoted passage corrects for the typographical error.

…

THE COURT: … [B]oth of you gentleman understand that if you leave the program on your own or they remove you because you didn't comply with their rules, you are to report immediately to the Marshall County Jail and if you don't that could cause more severe things that would be detrimental to you. So you understand that, the two gentleman going to CAAIR?

DEFENDANTS SHIPLEY AND BLUE: Yes, sir.

AA1295–97, 1308–09. The court later entered an order directing Blue to CAAIR. AA1312.

Blue interviewed for admission to the CAAIR program on September 24, 2013. AA1166. During that process, Blue was advised and acknowledged, in writing, that participation in the CAAIR program entailed "[w]orking at a local job provider for 40 hours a week," AA1168, and that "[f]ailure to maintain [his] position at [his] assigned work provider" or "to follow the rules and regulations of [his] assigned work provider" were "Major Rule Violations," AA1172. He further acknowledged that he was "not an employee … of CAAIR," "did not come to … CAAIR … seeking work," and would "receive no pay" for work performed in the program. AA1173, 1175. Finally, Blue acknowledged that he was "free to leave at any time," AA1173–74, and "agree[d] to abide by all rules of [the] CAAIR [program]," AA1172.

Blue graduated from the CAAIR program on September 25, 2014. AA1180. Consistent with his plea agreement, on September 26, the court entered judgment, sentencing Blue to a six-year suspended sentence. AA1314.

### 3.  *Dwayne Moss*

In January 2012, Dwayne Moss was charged with one felony count of driving under the influence in Adair County District Court. AA1318. He pleaded no contest and received a five-year suspended sentence. AA1342–46. In March 2012, the district attorney moved to revoke Moss's suspended sentence for violating the terms of his probation. AA1347–51. The court held a hearing on the motion on June 6, 2012. AA1352–72. There, Moss stipulated to the violations and was ordered to complete a six-month inpatient alcohol treatment program. AA1352–54, 1371. While the court had not yet selected a program for Moss, it nonetheless warned him that wherever he went, if he failed to complete the program, he would be "going to prison for five (5) years." AA1354. The court's colloquy with Moss is set forth below:

> THE COURT: All right. Mr. Moss, I have CF-12-3. In that case you were on a five (5) year suspended for a DUI. The State filed an application to revoke that alleging that you had violated the rules and conditions of that five (5) year suspended sentence. You are appearing here today with Mr. Strout, have visited, and you are entering a stipulation that you did, in fact, violate those rules and conditions?

> MR. MOSS: Yes.

> THE COURT: Is that correct?

> MR. MOSS: Yes, ma'am.

> THE COURT: We are going to pass sentencing on that for a term of one (1) year. A condition of passing that sentencing is you are going to be remanded to the custody of the sheriff's office pending your acceptance to an inpatient alcohol treatment.

MR. MOSS: Yes, ma'am.

THE COURT: Okay. That treatment has to be no less than six (6) months, but you have to complete. So you don't to get walk out on day—the final day of six (6) months. You have to stay there, whether it's nine months or a year, until those folks give you a certificate of completion.

....

MR. MOSS: Yes, ma'am.

THE COURT: So on the last day of six months, you can't call and say, I'm coming home. It won't work; okay?

MR. MOSS: Okay.

THE COURT: If you fail the inpatient, if you get kicked out, if you leave, whatever happens, do you understand you're going to prison for five (5) years?

MR. MOSS: Yes, ma'am, I understand that.

....

THE COURT: Once you complete that treatment, then you would still be on whatever is left of your five (5) suspended. You have all the same rules and conditions.

AA1353–55. The court also warned Moss that some inpatient programs have "pretty stringent rules" and that if he violated those rules and was kicked out, he would be "going to prison." AA1354–55. When asked if he understood, Moss again responded, "Yes, ma'am." AA1355.

On July 18, 2012, the court entered an order releasing Moss to CAAIR pursuant to its prior June 6 order. AA1374. Moss interviewed for admission to the CAAIR program the next day. AA1182. During that process, Moss was advised and acknowledged, in writing, that participation in the CAAIR program entailed

"[w]orking at a local job provider for 40 hours a week," AA1184, and that "[f]ailure to maintain [his] position at [his] assigned work provider" or "to follow the rules and regulations of [his] assigned work provider" were "Major Rule Violations," AA1188. He further acknowledged that he was "not an employee … of CAAIR," "did not come to … CAAIR … seeking work," and would "receive no pay" for work performed in the program. AA1189, 1191. Finally, Moss acknowledged that he was "free to leave at any time," AA1189–90, and "agree[d] to abide by all rules of [the] CAAIR [program]," AA1188.

Moss graduated from CAAIR on April 22, 2013, AA1193, 1375, and thereafter resumed serving his suspended sentence, AA1326–41, 1355.

### 4.    *Arthur Copeland*

In August 2009, Arthur Copeland was charged with four counts of uttering a forged instrument in Grady County District Court. AA1377–78. He pleaded guilty to all four charges and was sentenced to seven years' imprisonment with all but the first five years suspended. AA1379–93. In November 2014, while serving his suspended sentence, Copeland was again charged in Grady County District Court with one count of possession of methamphetamine and one count of possession of drug paraphernalia. AA1394. As a result, the district attorney moved to revoke Copeland's 2009 suspended sentence. AA1396. That revocation motion recounted several other probation violations, including at least three prior instances of methamphetamine use. *Id.*

In January 2015, Copeland agreed to enter the Grady County Drug Court program as part of a plea agreement in which he pleaded guilty both to the probation violations associated with his 2009 conviction and his newly filed 2014 charges. AA1400–05. Under that agreement, if Copeland successfully completed the program, all charges, including the application to revoke his suspended sentence, would be dismissed. If unsuccessful, the court would revoke his suspended sentence in full and concurrently sentence him to ten years' imprisonment for his 2014 charges. AA1403, 1405.

During his first year in the drug court program, Copeland repeatedly violated program rules. AA1407–08. He was found to have used methamphetamine on at least ten separate occasions and, as a result, was sanctioned to a total of 32 days in jail. *Id.* He was also ordered to enter Healthy Lifestyles, an inpatient drug treatment program. AA1408. He entered that program in July 2015 and successfully completed it one month later. *Id.* But that success was short lived. Within weeks of completing the program, Copeland was again found to have used methamphetamine and again was sanctioned with jail time. *Id.*

By December 2015, the State had had enough and moved to terminate Copeland's participation in the drug court program. AA1406, 1409. The violation report attached to the district attorney's application summarized the State's reasoning:

> Arthur Joshua Copeland was accepted into the Grady County Drug Court program on 1-26-15 and since that time has made a pattern of violating multiple rules that were designed to aid his

recovery. He is in arrears of $715.00 to the District Attorney for supervision fees and of $740.00 to the Grady County Court Clerk. He used methamphetamine on 4-20-15, 4-27-15, 5-24-15, 6-6-15, 6-19-15, 6-21-15, 6-22-15 and 10-29-15. He has been sanctioned to 32 days in jail and completion of an inpatient substance abuse treatment program for these violations of his court ordered rules and conditions. He has not been sanctioned for using methamphetamine on 11-30-15 and 12-9-15.

Arthur Joshua Copeland has refused to accept the help that the Grady County Drug Court has offered him and he continues to violate the court ordered rules and conditions that he accepted upon his sentencing to drug court.

AA1408, 1411.

In January 2016, the court gave Copeland one last chance to avoid incarceration, entering an order directing him to complete the CAAIR program as a "sanction[]," AA1412–13, "in lieu of termination," AA1415. As part of that order, the court specifically warned Copeland that if he failed to complete the program, "termination proceedings … w[ould] resume." *Id.*

Copeland interviewed for admission to the CAAIR program on January 7, 2016. AA1195. During that process, Copeland was advised and acknowledged, in writing, that participation in the CAAIR program entailed "work training at a job site," AA1198, and that "[f]ailure to maintain [his] position at [his] assigned work provider" or "to follow the rules and regulations of [his] assigned work provider" were "Major Rule Violations," AA1200. He further acknowledged that he was "not an employee of… CAAIR," "did not come to … CAAIR … seeking work," and would "receive no pay" for work performed in the program.

AA1198, 1201. Finally, Copeland acknowledged that he was "free to leave at any time," AA1201, and "agree[d] to abide by all rules of [the] CAAIR [program]," AA1200.

During a drug check in August 2016, Copeland tested positive for metham-phetamine and admitted to using opiates and alcohol. AA1418. As a result, the district attorney again applied to terminate Copeland's participation in the drug court program. AA1416, 1419. Copeland pleaded guilty to the violations alleged in the application and was sentenced according to the terms of his plea agreement to ten years' imprisonment with all but the first five years suspended. AA1422–34. Copeland is currently serving that sentence.

## D.    Plaintiffs' Response to Defendants' *Rooker-Feldman* Motion

Plaintiffs filed their response to Defendants' *Rooker-Feldman* motion in December 2019. AA1435–42. In it, Plaintiffs did not dispute any of the 9½ pages of facts included Defendants' motion. *Id.* They didn't submit their own statement of facts, nor did they present any evidence regarding the court's jurisdiction. *Id.*; District Court Opinion ("Op.") 11.

Rather, Plaintiffs argued *Rooker-Feldman* was inapplicable because they had alleged in their *Second Amended Complaint* that Defendants were the source of their injury—not the state-court orders sending them to CAAIR. AA1440. In particular, Plaintiffs alleged their injuries were the result of "a fraudulent and illegal cheap labor scheme between CAAIR and Simmons"—a scheme "to profit from a vulnerable workforce under the guise of providing alcohol and drug

counseling and rehabilitation services." AA1436–37, 1438 n.2. According to Plaintiffs, this alleged scheme defrauded their state sentencing courts into ordering them to CAAIR, thus causing their claimed injuries and rendering *Rooker-Feldman* inapplicable. AA1441–42 ("Defendants cannot rely on their own illegal and fraudulent conduct to impugn the state-court orders and take advantage of *Rooker-Feldman*."). Notably, in making this argument, Plaintiffs did not offer any evidence their state courts were unaware of how the CAAIR program operates or that but for this alleged lack of awareness they would not have ordered Plaintiffs to CAAIR. *See* AA1435–42. Rather, Plaintiffs argued these facts should be "assumed." AA1438 & n.2, 1441–43.

### E.    Defendants' Reply in Support of Their *Rooker-Feldman* Motion

Defendants filed their reply in support of their *Rooker-Feldman* motion on December 26, 2019. AA1444. In it, Defendants noted that *Rooker-Feldman* is a rule of subject matter jurisdiction, that their motion attacked the factual basis for the district court's jurisdiction, and that, as such, it was Plaintiffs' burden to present affidavits or other evidence establishing the court's subject matter jurisdiction by a preponderance standard. AA1448–49. Because "Plaintiffs … failed to carry [this] burden," Defendants argued, "dismissal [was] required." AA1449. Defendants further noted that Plaintiffs failed to offer any evidence regarding their fraud-on-the-court argument and, regardless, that the argument was "irrelevant" given this Court's longstanding authority "reject[ing]

arguments for a fraud-on-the-court exception to the *Rooker-Feldman* doctrine." AA1449–54.

## F.   The District Court's Opinion and Order

The district court granted Defendants' *Rooker-Feldman* motion. In doing so, it credited Defendants' proposed factual findings, all based on Defendants' un-rebutted evidence. Op. 1–10. Based on that evidence, the court found that Plaintiffs' claimed injuries were "the direct result of the state-court orders sending them to CAAIR" and that Plaintiffs had "failed to meet their burden of proof" to establish the contrary. Op. 11, 15. The court entered final judgment the same day. AA2163.

## G.   The District Court Denies Plaintiffs' Rule 59(e) Motion

Plaintiffs later moved to vacate the district court's decision, arguing the court erred by extending its ruling to all Plaintiffs and by incorporating legal analysis from Defendants' motion into its Opinion and Order. AA2178–90. In response, Defendants noted there was no material difference among any of Plaintiffs that would warrant limiting the doctrine to the four Plaintiffs discussed in Defendants' motion and that there's nothing improper about the court adopting a party's legal analysis. AA2205–2218. The court later denied Plaintiffs' motion, doing so "after careful and methodical evaluation of the record, issues, and relevant case law." AA2236. This appeal followed.

### III.    SUMMARY OF THE ARGUMENT

The Supreme Court is the only federal court with authority to review state-court decisions. A party aggrieved by a state-court decision can appeal up through his or her state system to the Supreme Court but cannot seek review in the lower federal courts. This principle is more than a matter of comity. It's a rule of subject matter jurisdiction. Known as the *Rooker-Feldman* doctrine, this rule bars former state-court litigants from bringing claims in federal district court that would effectively reverse or undo a final state-court decision.

As the district court correctly determined, this case is precisely the sort of *de facto* appeal that *Rooker-Feldman* was meant to prohibit. Plaintiffs are former state-court criminal defendants, all of whom were sentenced to a year-long addiction recovery program known as CAAIR. CAAIR is a work-based program. Participants in the program are required to perform work, without compensation, at various nearby work-providers including Simmons. This requirement is no secret. It is one of the "Major Rules" of the program, which participants are advised of and acknowledge, in writing, before ever entering CAAIR. If a participant doesn't want to live by these rules, that's fine. CAAIR is not for everyone, and participants are free to leave at any time. In Plaintiffs' cases, however, this freedom was cabined by the terms of their state-court criminal sentences, under which, if they failed to complete the program (either because they quit or were "kicked out" for violating CAAIR's rules), they would be remanded to the county jail and receive a lengthy prison term. Based on this "threat of incarceration," Plaintiffs sued CAAIR, Simmons, and several CAAIR officials, claiming

they should have been paid for their time in the CAAIR program and that Defendants unlawfully coerced their labor.

As the district court correctly determined, Plaintiffs' claims are beyond its limited jurisdiction. Defendants did not order Plaintiffs to attend CAAIR; their state sentencing courts did. Plaintiffs' claimed injuries—being required to work without compensation and under threat of incarceration—are the direct result of those state-court orders. As the district court observed, the essential element underlying each of Plaintiffs' claims is that their state sentencing courts should not have ordered them to complete the CAAIR program or face incarceration—that they should have been sent to some other recovery program, one that either doesn't have a work-requirement or pays minimum wage. Plaintiffs should have raised these arguments years ago in their respective state-court proceedings. The district court has no jurisdiction to address them.

Plaintiffs now appeal the district court's ruling, arguing *Rooker-Feldman* is inapplicable because, according to them, *Defendants* caused their injuries, not the state-court orders sending them to CAAIR. As before the district court, Plaintiffs do not cite any evidence establishing such causation, instead arguing the necessary facts should be "assumed," inferred from a lack of contrary evidence, or accepted as true based solely on the allegations in their complaint.

This is wrong. Plaintiffs' arguments misconstrue both the *Rooker-Feldman* doctrine and their burden as plaintiffs in responding to a factual attack on the court's subject matter jurisdiction. In deciding whether the *Rooker-Feldman*

doctrine applies, courts ask whether the state-court judgment *caused*, actually and proximately, the injury for which the federal-court plaintiff seeks redress. Where, as here, a party raises the doctrine via a factual attack, such causation is presumed unless the plaintiff presents evidence establishing the contrary by a preponderance standard. A court's finding that the plaintiff failed to meet this burden is a question of fact reviewed for clear error.

Here, the district court found that Plaintiffs' claimed injuries were "the direct result of the state-court orders sending them to CAAIR" and that Plaintiffs had "failed to meet their burden of proof" to establish the contrary. This finding was based on undisputed evidence, all submitted by Defendants, and is not clearly erroneous. As they acknowledge in their brief, Plaintiffs "did not present their own evidence in opposing" Defendants' motion, stating "they did not feel it was necessary." They were wrong. Having failed to present any evidence on the issue, Plaintiffs cannot show the district court clearly erred in finding that Plaintiffs' state-court judgments caused their claimed injuries.

Plaintiffs' various contrary arguments all come back to this same central flaw: they're based on assumptions and allegations, not evidence. Jurisdiction cannot be assumed or merely alleged. It must be proven. As the party invoking federal jurisdiction, it was Plaintiffs burden to present evidence showing by a preponderance standard that their state-court judgment did not cause their claimed injuries. They failed to do so. The judgment of the district court should be affirmed.

## IV.    STANDARD OF REVIEW

The district court dismissed this case under Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss may take one of two forms—a "facial attack" or a "factual attack." *Paper, Allied-Indus., Chem. And Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005). A facial attack "merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true," while a factual attack "goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends." *Id.*

This appeal involves a factual attack. In reviewing a factual attack, the court "may not presume the truthfulness of the complaint's factual allegations," *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), but rather must require "the plaintiff … to present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance" standard, *Southway v. Central Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003). This Court reviews a "district court's dismissal for lack of subject matter jurisdiction *de novo*, and any factual findings relevant to the court's jurisdiction for clear error." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006).

## V.    ARGUMENT

### A.    Plaintiffs' claims are barred under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is a rule of subject matter jurisdiction barring lower federal courts from hearing "cases brought by state-court losers

complaining of injuries caused by state-court judgments … and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It derives "from 28 U.S.C. § 1257(a), which allows parties to a state-court judgment to seek direct review in the Supreme Court of the United States, but not to appeal to the lower federal courts." *Mo's Express*, 441 F.3d at 1233.

Causation is a central requirement of the *Rooker-Feldman* doctrine. *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002).[3] In deciding whether the doctrine applies, courts ask "whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress." *Mo's Express*, 441 F.3d at 1237 (quoting *Kenmen Eng'g*, 314 F.3d at 476). Where, as here, a party raises the doctrine via a factual attack, such causation is "presumed" unless the plaintiff presents evidence "establishing the contrary" by a preponderance standard. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017). A court's finding that the plaintiff failed to meet this burden is a question of fact reviewed for clear error. *See Martinez v. U.S. Olympic Comm.*, 802 F.2d 1275, 1279 (10th Cir. 1986) (reviewing trial court's finding that plaintiff failed to present evidence meeting her burden of proof regarding jurisdiction for clear error); *United States v. Camick*, 796 F.3d 1206, 1223 (10th Cir. 2015) ("Because

---

[3] *Overruled in part on other grounds by Exxon Mobil Corp.*, 544 U.S. at 291–92.

causation is a factual issue, we review the district court's causation determination for clear error.").[4]

Here, the district court properly dismissed Plaintiffs' claims on *Rooker-Feldman* grounds. In doing so, it found Plaintiffs' claimed injuries were "the direct result of the state-court orders sending them to CAAIR" and that Plaintiffs "failed to meet their burden of proof" to establish the contrary. Op. 11, 15–16. This finding was based on undisputed evidence and is not clearly erroneous.

Plaintiffs' challenge to the district court's *Rooker-Feldman* decision is a narrow one. They don't dispute that state courts ordered each of them to complete the CAAIR program under threat of incarceration, that they each had the opportunity to appeal those orders but declined to do so, or that their state-court proceedings were final at the time this action was filed. Perhaps most important, Plaintiffs do not challenge *any* of the district court's factual findings as clearly erroneous. Rather, Plaintiffs argue the doctrine is inapplicable because, according to them, *Defendants* caused their injuries, not the state-court orders sending them to CAAIR.[5] As before the district court, Plaintiffs do not cite any

---

[4] *See also Kenmen Eng'g*, 314 F.3d at 476 (equating *Rooker-Feldman*'s causation requirement to causation required for Article III standing); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 77 (1978) (reviewing court's finding on causation in the standing context under clearly erroneous standard); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("Causation in the standing context is a question of fact….").

[5] While Plaintiffs also challenge the district court's determination that they're "state-court losers" and that their requested relief would effectively undo their state-court judgments, Plaintiffs' contentions on these other issues all rely on the

evidence establishing such causation, instead arguing the necessary facts should be "assumed,"[6] inferred from a lack of contrary evidence,[7] or accepted as true based solely on the allegations in their complaint.[8]

This is wrong. Plaintiffs' arguments misconstrue both the *Rooker-Feldman* doctrine and their burden as plaintiffs in responding to a factual attack on the court's subject matter jurisdiction. Defendants address these issues in turn.

1. ***The district court did not clearly err in finding that Plaintiffs' state-court judgments caused their claimed injuries.***

Plaintiffs' main argument on appeal is that "the District Court erred in finding that [their] injuries were 'caused' by the state court orders" sending them to CAAIR. This is a factual finding reviewed for clear error. *See supra* p. 21–22 and note 4. "Review under the 'clearly erroneous' standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed."

_____

same underlying causation argument. *See* Aplt. Br. 22–23 (arguing Plaintiffs aren't "state-court losers" because Defendants caused their injuries, not their state-court orders); *id.* 34–35 (arguing Plaintiffs' claims would not undo any state-court orders because Plaintiffs are claiming injuries from … Defendants' independent and wrongful actions," not "from the state-court orders").

[6] Aplt. Br. 22 (arguing it should be "assumed" the state courts would not have ordered Plaintiffs to CAAIR had they known it wasn't a treatment program).

[7] Aplt. Br. 33 (arguing, incorrectly, that *Rooker-Feldman* is inapplicable because "there is simply no evidence that the state courts knew" CAAIR required participants to perform work without compensation).

[8] Aplt. Br. 25–26, 30–31 n.4 (arguing *Rooker-Feldman* is inapplicable "as a matter of law" because Plaintiffs *alleged* Defendants were the cause of their injuries, not the state-court orders sending them to CAAIR).

*Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 623 (1993). When undertaking this review, a court must "view the evidence and inferences drawn therefrom in the light most favorable to the district court's determination," *United States v. Porter*, 928 F.3d 947, 962 (10th Cir. 2019), and cannot reverse simply because it would've "weighed the evidence differently" if sitting as the trier of fact, *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011).

Here, the district court did not clearly err in finding Plaintiffs' "claimed injuries—being required to work without compensation, under threat of incarceration—were the direct result of the state-court orders sending them to CAAIR." Op. 15. For starters, this finding is "presumed" correct, unless Plaintiffs present evidence "establishing the contrary" by a preponderance standard. *Kline*, 861 F.3d at 1180. Here, they didn't. Instead, Plaintiffs made a strategic decision (a bad one) "not [to] present their own evidence in opposing" Defendants' factual attack on the court's jurisdiction, stating "they did not feel it was necessary." Aplt. Br. 30 n.4. They were wrong. *See Southway*, 328 F.3d at 1274; *Martinez*, 802 F.2d at 1279. Having failed to present any evidence on the issue, Plaintiffs cannot show the district court's causation finding is clearly erroneous. *Martinez*, 802 F.2d at 1279 (district court didn't clearly err in finding plaintiff "failed to meet [his] burden … to invoke the [court's] diversity jurisdiction," where plaintiff "presented no evidence").

In addition to the applicable burden of proof, the record evidence—all submitted by Defendants—confirms the district court's causation finding. That evidence, which the district court credited, establishes:

1. That CAAIR is work-based recovery program, requiring participants to work full-time without pay at various nearby work-providers, including Simmons, Op. 1 (citing AA1108–09); Op. 4 (citing AA1153); Op. 6 (citing AA1163); Op. 8 (citing AA1184); AA1134;

2. That the work participants perform in the program is meant to give them a sense of self-worth and accomplishment and allow them to develop job skills in a structured, drug-free environment Op. 2 (citing AA1108);

3. That CAAIR's work requirement is one of the "Major Rules" of the program and that noncompliance may result in disciplinary action up to and including discharge from the program, Op. 2 (citing AA1109, 1116);

4. That CAAIR does not detain its participants; they are free to leave at any time but may, depending on their circumstances, face consequences from the criminal justice system if sent to CAAIR by court order, AA1110; Op. 16; *see also* Op. 2 (citing AA1109);

5. That before being admitted to CAAIR, prospective participants undergo an intensive interview process, during which a CAAIR representative explains the program in detail, including the facts set forth above, Op. 2 (citing AA1108–09);

6. That CAAIR similarly advises all referring authorities, including all sentencing courts, sending clients to the program, Op. 2 (citing AA1109, 1114, 1116, 1120); and

7. That Plaintiffs are former state-court criminal defendants, all of whom were ordered to complete the CAAIR program under threat of incarceration, Op. 3–4 (AA1255, 1260); Op. 4–5

(AA1295–97, 1308–09, 1312); Op. 6–7 (AA1353–55, 1374), Op. 10 (AA1412–13, 1415).

Based on this evidence, the court (at Op. 16) rejected Plaintiffs' attempt to divorce their injuries from the state-court orders sending them to CAAIR:

> In the instant case, Plaintiffs attempt to avoid *Rooker-Feldman* by framing their claims as an attack on Defendants' conduct rather than the court's. Specifically, they argue they aren't challenging the state-court orders sending them to CAAIR, only the requirement that they perform work without compensation and under threat of incarceration. The Court finds this is a distinction without a difference. Defendants did not require Plaintiffs to attend CAAIR—an Oklahoma state court did. CAAIR is a work-based recovery program. Participants in the program are required to work without compensation at work-providers, including Simmons. This requirement is one of the "Major Rules" of the program, which participants are advised of and acknowledge, in writing, before ever entering CAAIR. If a participant doesn't want to adhere to the rules, they are free to leave at any time. The fact that Plaintiffs' failure to complete the CAAIR program would have resulted in a lengthy prison term is not an injury traceable to Defendants. Rather, it is the actual and proximate result of Plaintiffs' state court criminal proceedings. See Ex. 2 at 56 ("THE COURT: …. [D]on't try to play fast and loose with [CAAIR's] rules or they'll kick you out and then you'll end up in the penitentiary if they kick you out."); Ex. 3 at 32, 43–44 ("THE COURT: …. If you don't complete the program, you won't get a good sentence …. [I]f you leave the program on your own or they remove you because you didn't comply with their rules, you are to report immediately to the Marshall County Jail."); Ex. 4 at 38 ("THE COURT: If you fail the inpatient, if you get kicked out, if you leave, whatever happens, do you understand you're going to prison for five (5) years? MR. MOSS: Yes, ma'am, I understand that."); Ex. 5 at 39 ("In lieu of termination [Defendant] is to complete the 1 yr CAAIR program…. If [Defendant] fails to complete CAAIR[,] termination proceedings in the Grady County Drug Court will resume.").

As the district court's analysis makes clear, the distinction Plaintiffs attempt to draw between the state-court orders sending them to CAAIR and Defendants' conduct once they arrived at CAAIR does not exist. CAAIR did not change its programming after Plaintiffs arrived. It is and has always been a work-based recovery program, requiring participants to perform work without compensation at various nearby work-providers, including Simmons. Op. 1–2 (citing AA1108). As the undisputed facts make clear, "[t]his work is meant to give participants a sense of self-worth and accomplishment and allow them to develop job skills in a structured-drug free, environment." Op. 2 (citing AA1108). Plaintiffs' demand that CAAIR abandon this essential attribute of its program, completely changing its rehabilitative model, is no different than challenging the state-court orders sending Plaintiffs to CAAIR. Op. 16. Regardless, the "essential element" underlying Plaintiffs' claims is the same: "that their state sentencing court should not have ordered them to complete the CAAIR program or face incarceration—that they should have sent them to some other recovery program, one that either doesn't have a work requirement or pays minimum wage." Op. 15. This, as the district court observed, "is precisely the sort of *de facto* appeal that *Rooker-Feldman* was meant to prohibit." *Id.*; *see Market v. City of Garden City*, 723 Fed. App'x 571, 575 (10th Cir. 2017) (affirming *Rooker-Feldman* dismissal even though plaintiff denied challenging her state-court judgment, explaining the doctrine's "limitation on upsetting a state-court judgment isn't a pleading requirement—it's substantive").

The district court didn't clearly err in finding that Plaintiffs "failed to meet their burden of proof" to show that Defendants' conduct, rather than the state-court orders sending them to CAAIR, caused their claimed injuries.[9]

### 2. *Plaintiffs' mere allegation that Defendants caused their injuries is not controlling for Rooker-Feldman purposes.*

Unable to challenge the court's causation finding based on the evidence, Plaintiffs spend much of their brief arguing the evidence shouldn't matter. Most notably, they argue *Rooker-Feldman* is inapplicable because they *alleged* Defendants caused their injuries, not the state-court orders sending them to CAAIR. Aplt. Br. 25–26. According to Plaintiffs, these "allegations"—without more—render the doctrine inapplicable "as a matter of law." Aplt. Br. 31 n.4.

This is wrong. *Rooker-Feldman*'s "limitation on upsetting a state-court judgment isn't a pleading requirement—it's substantive." *Market*, 723 Fed. App'x at 574; *accord Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) ("Can a federal plaintiff avoid *Rooker–Feldman* simply by clever pleading—by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not."); *Johnson v.*

---

[9] Plaintiffs note (at 18) that they never "litigated the claims brought in this case in a state forum and lost." This is irrelevant. *Bolden v. City of Topeka*, 441 F.3d 1129, 1141 (10th Cir. 2006) (*Rooker-Feldman* does not depend on "whether or not" a claim was previously "raised in state court"); *cf. also Myers v. Wells Fargo Bank, N.A.*, 685 Fed. App'x 679, 681 (10th Cir. 2017) ("The [*Rooker-Feldman*] doctrine applies regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims.").

*Orr*, 551 F.3d 564, 568 (7th Cir. 2008) (in applying *Rooker–Feldman*, courts "look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff."). Where, as here, a defendant raises the doctrine via a factual attack on the court's jurisdiction, the district court "may not presume the truthfulness of the complaint's factual allegations," *Holt*, 46 F.3d at 1003, but rather must require "the plaintiff … to present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance" standard, *Southway*, 328 F.3d at 1274. Plaintiffs did not do this. As the court correctly found, they "failed to meet their burden of proof."

### 3.   *Plaintiffs' fraud-on-the-court argument is both irrelevant and unsubstantiated.*

Plaintiffs next argue *Rooker-Feldman* is inapplicable because there is "no evidence that the state courts knew that Defendants were operating an illegal work camp, as opposed to a treatment program, when they issued the orders" sending Plaintiffs to CAAIR. In particular, they argue these "courts would not have … ordered [them] to [CAAIR] had the courts [known] CAAIR [was not a] treatment program." Aplt. Br. 22. This mistake of fact, according to Plaintiffs, was the result of Defendants' "fraudulent conduct"—having allegedly operated CAAIR "under the guise of a 'treatment' program." *Id.* at 30, 34.

This is nonsense. Not only is there is no fraud-on-the-court exception to the *Rooker-Feldman* doctrine, but Plaintiffs have not presented any evidence such fraud ever took place. It didn't. Defendants address these issues in turn.

a. *A mistake of fact by Plaintiffs' state sentencing courts—whether the result of fraud or a simple mistake—cannot establish federal jurisdiction.*

First, Plaintiffs' fraud-on-the-court argument lacks merit because, as a rule of subject matter jurisdiction, the *Rooker-Feldman* doctrine does not depend on what a state court "knew" or "didn't know" when it entered a given order. *Farris v. Burton*, 686 Fed. App'x 590, 593 (10th Cir. 2017). This is true even where, as here, a federal plaintiff accuses the defendant of defrauding the state court or otherwise "corrupting the state judicial process." *Id.* This Court's stance on this issue is clear. In the last 20 years, it has rejected arguments for a fraud-on-the-court exception to the *Rooker-Feldman* doctrine on at least 13 occasions.[10] This is because the "doctrine is not concerned with *why* a state court's judgment might be mistaken (fraud is one such reason; there may be others), but with *which federal court* is authorized to intervene." *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015); *see also Tal*, 453 F.3d at 1256 ("[N]ew allegations of fraud might create grounds for appeal, but that appeal should be brought in the state courts."). In short, the "reason a litigant gives for contesting a state court's decision cannot endow a

---

[10] *See Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006); *Richardson v. Title IV-D Agency*, 842 F. App'x 190, 193 (10th Cir. 2021); *MacIntyre v. JP Morgan Chase Bank, N.A.*, 827 Fed. App'x 812, 818 (10th Cir. 2020); *Tso v. Murray*, 822 F. App'x 697, 701 (10th Cir. 2020); *Goodwin v. Hatch*, 781 Fed. App'x 754, 759 (10th Cir. 2019); *Farris*, 686 Fed. App'x at 593; *Myers*, 685 Fed. App'x at 681; *Bradshaw v. Gatterman*, 658 Fed. App'x 359, 362 (10th Cir. 2016); *Collins v. CFAM Fin. Servs., LLC*, 668 Fed. App'x 333, 334 (10th Cir. 2016); *West v. Evergreen Highlands Ass'n*, 213 Fed. App'x 670, 674 n.3 (10th Cir. 2007); *Ellis v. CAC Fin. Corp.*, 6 Fed. App'x 765, 769 (10th Cir. 2001); *Bisbee v. McCarty*, 3 Fed. App'x 819, 823 (10th Cir. 2001); *LeCates v. Barker*, 242 F.3d 389 (10th Cir. 2000).

federal district court with authority; that's what it means to say that the *Rooker Feldman* doctrine is jurisdictional." *Iqbal*, 780 F.3d at 729.

Plaintiffs' reliance on *Fochtman v. DARP, Inc.*, 2019 WL 4740510 (W.D. Ark. 2019), is misplaced. Plaintiffs argue (at 33) that *Fochtman* rejected a "similar" *Rooker-Feldman* argument on the ground that the movant, defendant Hendren Plastics, failed to provide evidence "that the drug court judges [who ordered the plaintiffs to DARP] were personally aware of the details of DARP's and Hendren's business arrangement." This is wrong. Hendren did *not* raise a *Rooker-Feldman* argument in *Fochtman*, nor did the district court reject one. *Fochtman*, 2019 WL 4740510, at *9. Rather, Hendren argued that "by ordering the Plaintiff[s] to DARP, the drug courts tacitly … ordered the participants' wages be paid to DARP." *Id.* In short, Hendren's *only* reference to the state courts' orders was in support of a wage-assignment defense. *See id.* This is an argument regarding the *merits* of the plaintiffs' wage claims—not a federal district court's *jurisdiction* to hear them. While a state sentencing court's awareness of various aspects of the DARP program may have been relevant to the merits of Hendren's wage-assignment defense, it's irrelevant for *Rooker-Feldman* purposes. Notably, this is true even in the Western District of Arkansas, where (as here) the prevailing circuit case law rejects any fraud-on-the-court exception to the *Rooker-Feldman* doctrine. *Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004).

Here, Plaintiffs argue—without evidence—that the district court erred in finding their injuries were caused by the state-court orders sending them to

CAAIR because the courts that entered those orders were either mistaken about or unaware of various aspects of the CAAIR program. These claims are contrary to Defendants' unrebutted evidence, which the district court credited. But more important, they're irrelevant. Even if Defendants procured the orders sending Plaintiffs to CAAIR through outright fraud—*and they did not*—that fact still would not give rise to federal jurisdiction.[11] Rather, what matters is whether the state-court orders sending Plaintiffs to CAAIR caused their claimed injuries. Here, based on Defendants' unrebutted evidence, the district court found that they did. Op. 15. That finding is not clearly erroneous.

> b.  *Even if a state court's mistaken belief that CAAIR was a treatment program could establish federal jurisdiction (and it can't), Plaintiffs failed to present evidence establishing that theory by a preponderance standard.*

Second, even if a state court's mistaken belief that CAAIR was a treatment program could somehow create federal jurisdiction (and it can't), Plaintiffs still failed to present evidence establishing that theory by a preponderance standard. Again, Plaintiffs argue *Rooker-Feldman* does not apply because their state sentencing courts "would not have … ordered [them] to [CAAIR] had the courts [known that] CAAIR [was not a certified] treatment program." Aplt. Br. 22. Plaintiffs did not offer *any* evidence in support of this contention—instead arguing it should be "assumed." *Id.* At most, Plaintiffs point to remarks from

---

[11] If anything, Plaintiffs' fraud-on-the-court argument *confirms* the doctrine applies. *MacIntyre*, 827 Fed. App'x at 818 (*Rooker-Feldman* bars claims that a state-court judgment was "fraudulently procured" because such a claim "depends on a federal court finding that [a] state court[] erred in entering judgment").

Judge Johnson (who sentenced Blue and McGahey), referring to CAAIR as a "treatment program," and headings on the preprinted form orders sending McGahey, Blue, and Moss to CAAIR.[12] These references do not support Plaintiffs' argument for at least four reasons.

*First*, to the extent Plaintiffs' mistake-of-fact argument relies on a fraud theory, there is *zero* evidence that Defendants misled the state courts into believing that CAAIR was a certified "treatment" program. Indeed, the only evidence on the issue, which the district court credited, shows the opposite. CAAIR fully advised all referring authorities—including the Plaintiffs' sentencing courts—of what the CAAIR program entailed. Op. 2 (citing AA1109). The materials provided to those courts described CAAIR as "recovery" program (not a "treatment" program), AA1114, 1120, 1133, advised that participants are required to work "full time" at an "assigned work provider," AA1116, 1134, and expressly stated that participants will "not receive wages" or otherwise be paid for the work they perform in the program, AA1114, 11120. If the courts were mistaken, it was not because of Defendants. The district court did not clearly err in refusing to find otherwise.

*Second*, there is no evidence that the judges who referred to CAAIR as a "treatment" program were using the word in the strict legal sense defined by Okla. Stat. tit. 43A, § 3-461. Plaintiffs McGahey, Blue, and Moss were each sent

---

[12] *Cf. United States v. Young*, 263 Fed. App'x 710, 714 (10th Cir. 2008) ("We are hesitant to place too great an emphasis" on "boilerplate" language in a stock order.).

to CAAIR pursuant to a deferred or suspended sentence—not drug court. There is no requirement in this context that Plaintiffs be sent to a treatment program, nor is there any evidence that McGahey, Blue, or Moss's sentencing judges— none of whom presided over their counties' drug courts—were using the term in the narrow legal sense defined by statute. This is particularly true given the *unrebutted* evidence just mentioned showing that CAAIR fully advised *all* referring authorities—including Plaintiffs' state courts—of what the CAAIR program entailed. Given these facts, the Court should *not* simply "assume[]" that the judges who sentenced McGahey, Blue, and Moss believed CAAIR was a certified "treatment" program.

*Third*, McGahey, Blue, and Moss aside, Plaintiff Arthur Copeland has not presented *any* evidence that his sentencing court thought of, or ever referred to, CAAIR as a "treatment" program. This is because the court did not order Copeland to CAAIR for treatment, but as a "sanction[]," "in lieu of incarceration." AA1412–13, 1415. Faced with this fact, Copeland speculates. In particular, he argues it should be "assumed" that his state court thought CAAIR was a "treatment" program because CAAIR sent a letter to his attorney, stating CAAIR "is based on a philosophy of change to achieve a clean and sober life for [its] clients." Aplt. Br. 22 (citing AA1414). This is nonsense. The letter at issue was mailed to Copeland's attorney *after* the state court had already "sanctioned [Copeland] to attend and complete the CAAIR program." AA1412–13. The

letter does not reference "treatment," much less state that CAAIR is a certified treatment provider. *See* AA1414.

*Finally*, even if the state courts mistakenly believed CAAIR was a certified "treatment" program within the meaning of Okla. Stat. tit. 43A, § 3-461, there is still no evidence these courts would have refrained from sending Plaintiffs to CAAIR had they known otherwise. Rather, the evidence suggests the opposite. Take Brad McGahey for example. While his state sentencing court may have referred to CAAIR as a "treatment center," it also explicitly stated that it was not sending McGahey to CAAIR for treatment. AA1255. This is because McGahey "d[id]n't have a drug and alcohol problem," the court observed, but an "attitude" problem, stating that it was sending McGahey to CAAIR because "work[ing] six days a week … might change his view toward people and toward authority and dealing with other people." AA1255–56. What's more, regardless of whether the court understood the difference between a "recovery" program and a "treatment" program, Judge Johnson (who sentenced McGahey and Blue) clearly understood the basic features of CAAIR's work-based recovery model, stating participants "work six days a week and … go to AA meetings and things like that at night." AA1255. "[Y]ou don't go to CAAIR and get up [at] ten and watch Oprah or Dr. Phil," Judge Johnson explained,

> [Y]ou don't get to sleep in and twiddle your thumbs and sip lattes. *You go there and you work and work hard. Have to get up early and work hard. Probably collapse into bed and say thank God I made it through this day and I'll get up and do it again.* I'm not trying to scare you,

> but it's a great program. I've heard great things about it, but it's not
> going to be easy….

AA1296 (emphasis added). There is *nothing* in the record to suggest Judge Johnson would have changed how he sentenced McGahey or Blue had he known CAAIR was not a certified "treatment" program. Finally, as for Copeland, his sentencing court did not send him to CAAIR for treatment, but as a "sanction[]," "in lieu of incarceration." AA1412–13, 1415.[13]

### 4.   *The district court properly defined Plaintiffs' claimed injuries.*

Plaintiffs next attempt to get around the district court's causation finding by quietly redefining their claimed injuries. As a reminder, the district court described Plaintiffs' claimed injuries as "being required to work without

---

[13] In addition to being irrelevant and unsubstantiated, Plaintiffs' fraud-on-the-court argument should be rejected on estoppel grounds. Plaintiffs made a similar fraud-based argument in their response to Simmons' first *Motion to Dismiss*. *See* AA692, 699–701, 703, 705. But when faced with having to plead those allegations with particularity, Plaintiffs abandoned them, stating that their claims "do not 'hinge' on fraud, nor do they include fraud as an element." AA854. "This is a simple matter," Plaintiffs explained, "and no question of fraud need enter the inquiry." *Id.* Plaintiffs' counsel made similar representations to Defendants in the parties' written correspondence. *See* AA919 ("Fraud is not an element of any claim raised by plaintiffs."). Based on these representations, the Court rejected Simmons' argument that Plaintiffs should be required to plead their fraud allegations with particularity. AA1011, 1019–20.

Having prevailed on this issue by disclaiming their fraud allegations, Plaintiffs should be estopped from reviving them to establish jurisdiction. *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) (Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

compensation, under threat of incarceration." Op. 15. Plaintiffs don't dispute that description but do, throughout their brief, pepper in accusations of various other quasi-tortious conduct allegedly engaged in by Defendants. They, for example, allege certain Plaintiffs sustained workplace injuries while at Simmons and that Defendants verbally threatened them if their work was deemed unsatisfactory or they were unable to work due to injuries. Aplt. Br. 5.

This is a red herring. Notably, Plaintiffs never say these other, more individualized allegations define their claimed injuries. Indeed, Plaintiffs *did not even mention* these other allegations in their response to Defendants' *Rooker-Feldman* motion, *see* AA1435–43, or their Rule 59(e) motion to vacate, *see* AA2164–77. That's because, as Plaintiffs have previously noted, these other allegations were merely included for "background" purposes. Supplemental Appendix ("SA") 91. Plaintiffs are "not seeking any medical related damages," *id.*, nor do their claimed injuries arise from any verbal threats allegedly made by Defendants, SA123. Rather, when asked in discovery, Plaintiffs defined their claimed injuries as being required, "as a condition of continued participation in [the CAAIR] program and as the only means of avoiding incarceration, to perform work" without pay "at various nearby companies and organizations, including Simmons." *Id.* This is the same as the district court's description of Plaintiffs' injuries.

5.   ***The district court did not misconstrue the state-court orders.***

Plaintiffs next argue the district court erred by "misconstrue[ing] both the nature of [their] claims and the orders entered by the state courts." In particular,

they argue the "state courts did not order [them] to work at Simmons … without pay" but rather "to enter a treatment program," and that *Rooker-Feldman* is inapplicable because they're challenging the former, not the latter.

This is wrong. The state courts didn't order Plaintiffs "to enter a 'treatment' program"—they ordered them to complete CAAIR. Period. That these courts may have thought CAAIR was a certified "treatment" program (a fact that is disputed and on which Plaintiffs presented zero evidence) is irrelevant. As the district court recognized, "completing" the CAAIR program requires compliance with CAAIR's rules. Op. 16.[14] One of those rules, relevant here, is that "[p]articipants … are required to work without compensation at work-providers, including Simmons." Op. 16; AA1108, 1114 1116, 1120. If a participant doesn't want to live by those rules, that's fine. They "are free to leave at any time." Op. 16; AA1110. The fact that Plaintiffs' failure to complete the CAAIR program would've resulted in a lengthy prison term is not an injury traceable to

---

[14] *See also* AA1258 ("THE COURT: …. [D]on't try to play fast and loose with [CAAIR's] rules or they'll kick you out and then you'll end up in the penitentiary if they kick you out."); AA1297, 1308–09 ("THE COURT: …. If you don't complete the program, you won't get a good sentence …. [I]f you leave the program on your own or they remove you because you didn't comply with their rules, you are to report immediately to the Marshall County Jail."); AA1354 ("THE COURT: If you fail the inpatient, if you get kicked out, if you leave, whatever happens, do you understand you're going to prison for five (5) years? MR. MOSS: Yes, ma'am, I understand that."); AA1415 ("In lieu of termination [Copeland] is to complete the 1 yr CAAIR program…. If [he] fails to complete CAAIR[,] termination proceedings … will resume.").

Defendants. Rather, as the district court found, "it is the actual and proximate result of Plaintiffs' state court criminal proceedings." Op. 16.

These facts distinguish this case from the Fifth Circuit's unpublished decision in *Brown v. Taylor*, 677 Fed. App'x 924 (5th Cir. 2017). *Brown* involved a civilly committed state-court defendant, who sued his detention facility and other state officials, challenging various conditions of his confinement—like being held in squalid conditions and deprived access to his mail and personal property. The Court held *Rooker-Feldman* was inapplicable because the challenged conditions were "imposed by Defendants, not the state court." *Id*. at 927.

Here, unlike *Brown*, Defendants did not force any conditions on Plaintiffs. CAAIR, unlike the facility in *Brown*, is a voluntary program. It doesn't detain its participants. They're free to leave at any time. AA1110. Again, that Plaintiffs' failure to complete the program would've resulted in a lengthy prison term is not an injury traceable to Defendants, but rather "is the actual and proximate result of Plaintiffs' state court criminal proceedings." Op. 16.

6. ***The district court did not err in finding Plaintiffs' requested relief would "undo" the state-court orders sending them to CAAIR.***

Plaintiffs' next argument—that *Rooker-Feldman* is inapplicable because they "do not ask this Court to reverse or undo any state court order"—is equally unavailing. "The limitation on upsetting a state-court judgment isn't a pleading requirement—it's substantive." *Market*, 723 Fed. App'x at 575. In applying the doctrine, courts "look beyond the four corners of the complaint to discern the

*actual injury* claimed by the plaintiff." *Johnson*, 551 F.3d at 568. That a plaintiff does not expressly ask to reverse or undo a state-court judgment—or even denies seeking such relief—is not controlling. *Market*, 723 Fed. App'x at 574; *Hoblock*, 422 F.3d at 88.

This Court's application of these principles in *Market* is instructive. Like this case, *Market* involved a former state-court criminal defendant suing for money damages based on the alleged illegality of her sentence. 723 Fed. App'x at 571–72. The plaintiff in the case, Jada Market, had twice been convicted and jailed for driving under the influence of alcohol. *Id.* On both occasions, she was sentenced to the mandatory minimum required by a municipal ordinance. *Id.* At the time, she "accepted and served her sentences without challenge." *Id.* at 572. Years later, however, she filed a federal lawsuit against the municipality, alleging that enforcement of the ordinance's mandatory minimums violated her due process rights. Regarding jurisdiction, Market argued that her claims were not barred by *Rooker-Feldman* because she was not asking the court to overturn her convictions but rather was seeking money damages for "unlawful enforcement" of those convictions through "illegally extended incarceration." *Id.* at 574. The district court disagreed, dismissing her claims for lack of subject matter jurisdiction. This Court affirmed.

In doing so, the Court held *Rooker-Feldman* bars federal suits challenging state-court criminal sentences and that Market's requested relief, money damages, impermissibly sought to "undo ... her state-court punishment." *Id.*

Along the way, the Court stressed that plaintiffs cannot avoid *Rooker-Feldman* through "creative lawyering." *Id.* at 575. Although Market's claims were "cleverly framed" to avoid the doctrine, the Court nonetheless looked beyond the form of those claims to their substance. *Cf. id.* ("The limitation on upsetting a state-court judgment isn't a pleading requirement—it's substantive."). Because Market's injuries were the product of a state-court judgment, the Court affirmed the dismissal of her claims on jurisdictional grounds.

Here, as in *Market*, Plaintiffs seek money damages in an effort to put themselves in the same position they would have been in had they never gone to CAAIR. As the district court found, "this is precisely the sort of 'backward-looking request for personal compensation' that *Rooker-Feldman* prohibits." Op. 17; *see Market*, 723 Fed. App'x at 574 ("Market seeks to undo, to the extent possible, her state-court punishment. Though time served can't be returned, compensatory damages attempt to put plaintiffs in the position they would be in without the faulty imprisonment. That isn't allowed." (citation omitted)).

For their part, Plaintiffs argue this finding is erroneous because it's "impossible to reconcile" with the district court's earlier ruling that the State of Oklahoma was not a required party under Rule 19(a)(1)(B). This is wrong. The district court's earlier ruling merely held that "Simmons ha[d] *presented insufficient argument*" for "the Court to evaluate [its] contention" that "a holding in favor of Plaintiffs would … collaterally attack" a state-court judgment. AA1016 (emphasis added). The court's *Rooker-Feldman* ruling involved different

facts and a different procedural posture. Not only did Defendants present additional evidence and argument showing Plaintiffs' requested relief would undo their state-court orders, but the burden of proof had shifted—from Defendants (under Rule 19) to Plaintiffs (under *Rooker-Feldman*). Having failed to present any evidence on the issue, Plaintiffs "failed to meet their burden of proof." Op. 11.

## B.    The district court did not err in dismissing all Plaintiffs.

Plaintiffs next argue the Court erred in dismissing those Plaintiffs not specifically discussed in Defendants' *Rooker-Feldman* motion. They claim the Court should've required a separate motion before dismissing these Plaintiffs and that its dismissal of their claims, without separate analysis or discussion, violated their due process rights, requiring reversal. None of this is true.

The *Rooker-Feldman* doctrine is a rule of subject matter jurisdiction. As a court of limited jurisdiction, this Court has "an independent obligation to address [its] own subject-matter jurisdiction and can dismiss a case *sua sponte*" on that basis. *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017). This obligation is not discretionary. By rule, a federal court "must dismiss" an action "if it determines at any time it lacks subject matter jurisdiction," Fed. R. Civ. P. 12(h)(3), "even [if] the parties fail to raise the issue," *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986). The *sua sponte* dismissal of a plaintiff's claims for lack of subject matter jurisdiction does not violate due process. *Scholastic Entm't., Inc. v. Fox Entm't Group, Inc.*, 336 F.3d

982, 985 (9th Cir. 2003); *see Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). Rather, for a party aggrieved by an erroneous *sua sponte* dismissal, due process is afforded by the opportunity to identify errors in the court's decision, either through a post-judgment motion or appeal. *Curley*, 246 F.3d at 1284

Here, the district court did not err in extending its ruling to all Plaintiffs, nor did it violate any Plaintiff's due process rights. While Defendants' motion may have discussed only four Plaintiffs, the court nonetheless recognized that the same analysis was applicable to all Plaintiffs. The court wasn't required to wait for a second motion before making that determination. While Defendants did not submit state-court records for these other Plaintiffs, such evidence was unnecessary given Plaintiffs' "*well known*" allegations that they were "*court-ordered*" participants in the CAAIR program. *See* AA1680 (emphasis added).[15] *See United States v. Nelson*, 868 F.3d 885, 890–91 (10th Cir. 2017) (statements in party's briefs may operate as judicial admissions). Indeed, Plaintiffs' TVPRA claims all rely on the fact that CAAIR allegedly "abuse[d] … legal process" by "inserting itself into [Oklahoma's] drug court system," thus "divert[ing them] from treatment facilities to CAAIR." AA854. These "well known" facts and allegations bring the other Plaintiffs' claims directly in line with those of the four Plaintiffs

---

[15] *Accord* AA1672 (describing Plaintiffs as "participants in a court-ordered drug rehabilitation program called … CAAIR"); AA1705–1710 (alleging class reps Copeland, McGahey, Spurgin, and Mills entered CAAIR "as a condition of probation and in lieu of serving prison time"); AA1710, 1715, 1717 (noting Plaintiffs Mills, Harms, and O'Neal were sentenced to CAAIR); AA701 (arguing Plaintiffs chose not to leave CAAIR for fear it would "result in a negative report to [their sentencing] court[s] placing them in … danger of incarceration").

discussed in Defendants' motion. That the court did not separately discuss each Plaintiff's claims does not constitute error given that the Court's analysis was equally applicable to all Plaintiffs. *United States v. Rogers*, 2016 WL 7650583, at *1 (D. Kan. Mar. 9, 2016) (denying Rule 59(e) motion seeking relief based on the court's failure to conduct a "separate analysis … as to each of [the defendant's] claims," holding, "There are no specific rules governing the format for judicial opinion writing and none that would require courts to repeat an analysis that equally applies to multiple claims or individuals.").

The idea that the Court's dismissal of these other Plaintiffs violated their due process rights is equally unavailing.[16] These Plaintiffs have been afforded due process. They exercised it with the filing of their Rule 59(e) motion and this appeal. *See Curley*, 246 F.3d at 1284. But Plaintiffs do not allege—much less show—that their claims or circumstances differ in any material respect from those of the four Plaintiffs discussed in Defendants' motion and the Court's Opinion and Order. In short, they haven't shown that the Court erred. Because it didn't. Rather, the only alleged error is a technical one: that the Court should've required a separate motion before dismissing them along with the four main Plaintiffs. For the reasons just stated, that argument is wrong.

---

[16] Plaintiffs' due process argument consists of a single sentence, unsupported by any citation to authority. Aplt. Br. 37. This alone is a sufficient basis for rejecting the argument. *See Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1238 (10th Cir. 2010) (Court "will not construct arguments for [parties] out of isolated sentences in [their] briefs. Nor will [it] fill the gaps in undeveloped arguments unsupported by citations to relevant authority.").

## C.  The district court did not err by incorporating legal analysis from Defendants' motion into its Opinion and Order.

Finally, Plaintiffs argue (at 37) that the district court erred by incorporating legal analysis from Defendants' motion into its Opinion and Order. They claim the court's adoption of Defendants' reasoning is evidence not only of bias, but of the court's "failure to perform its judicial function."

This is wrong. There is nothing improper about the district court's adoption of Defendants' legal analysis.[17] Federal courts are afforded wide latitude in deciding not only *whether* but *how* to write their opinions. *Rogers*, 2016 WL 7650583, at *1; *Taylor v. McKeithen*, 407 U.S. 191, 194 n.4 (1972). District courts are "not required to write an opinion or lengthy order in every case," and "may properly adopt a party's arguments on a given issue instead of issuing an order setting out a free-standing elaboration of the court's views." *Jackson v. Fed. Exp.*, 766 F.3d 189, 199 (2d Cir. 2014); *see also Washington v. Price*, 95 F.3d 52 (5th Cir. 1996) (unpublished) (affirming judgment, holding district court did not err by "adopting the legal analysis and reasoning set forth in [the defendant's summary judgment] motion as its own memorandum order"). The only requirement in this regard is that the trial court's decision allow for meaningful appellate review.

---

[17] Plaintiffs only challenge the district court's adoption of Defendants' legal analysis, acknowledging that its adoption of Defendants' proposed factual findings "provides no basis for reversal." Aplt. Br. at 39. This makes sense given that Plaintiffs did not present any evidence in response to Defendants' motion and, thus, effectively waived any right to challenge the court's findings. *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006) (a district court's decision to credit uncontroverted evidence "can virtually never be clear error").

*Williams v. Sirmons*, 299 Fed. App'x 780, 781–82 (10th Cir. 2008); *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 576 Fed. App'x 759, 763 (10th Cir. 2014). Where such review is possible, the court's decision is accorded the same respect and is subject to the same standards of review as any other, even if the court's reasoning was adopted, verbatim, from a party's brief. *Williams*, 299 Fed. App'x at 781–82; *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 830 (10th Cir. 2005); *see also Westside Prop. Owners v. Schlesinger*, 597 F.2d 1214, 1216 n.3 (9th Cir. 1979) ("[I]f the content of the district court's opinion is not erroneous, we do not believe the Source of that opinion should taint it.").

Here, the district court's adoption of Defendants' legal analysis does not preclude meaningful appellate review. Whether jurisdiction exists based on the undisputed facts presented is a pure question of law, reviewed *de novo*. *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). Such rulings do not even require a statement of the district court's reasoning to allow for meaningful review, much less one written entirely in the court's own words. *Sunshine Dev., Inc. v. F.D.I.C.*, 33 F.3d 106, 111 (1st Cir. 1994) ("Since we review the legal issue *de novo*, access to the district court's rationale is not a prerequisite to appellate review."); *Williams*, 299 Fed. App'x at 781–82 (affirming judgment, holding trial court's "verbatim" adoption of defendant's "analysis and conclusions of law" did not preclude "meaningful review," and thus did "not warrant reversal"). Indeed, Plaintiffs' leading case on this issue, the Seventh Circuit's *DiLeo* decision, reaches the same conclusion. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626

(7th Cir. 1990). There, while the Court expressed frustration with the trial court's one-line explanation that it was dismissing the case "for the reasons set forth in [the defendant's] brief," the Court nonetheless affirmed the judgment, holding remand was unnecessary given that the legal issues involved were subject to *de novo* appellate review. *Id.*

The Tenth Circuit's decision in *Woodruff* is not to the contrary. The issue in that case was whether the trial judge had abused his discretion in approving a class action settlement. *New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1290 (10th Cir. 2008). The judge had done so based on "the reasons stated, arguments advanced, and authorities cited by [defendant] in its reply"—no additional explanation was provided. *Id.* On appeal, the Tenth Circuit held this explanation was "insufficient" to allow for review of the court's discretionary ruling. *Id.* Without a fuller statement of the trial judge's reasoning, the Court explained, it could not determine whether the judge had abused his discretion because there was no way to know whether the judge had even exercised his discretion. *See id.* at 1290–91. Unable to conduct a meaningful review, the Court remanded for further explanation. *Id.* at 1291. Such remands are common where—as in *Woodruff* and unlike the present case—the ruling at issue is a discretionary one. *See, e.g.*, *Griffen v. City of Oklahoma City*, 3 F.3d 336, 340 (10th Cir. 1993) (lack of explanation for trial court's discretionary ruling precluded appellate review, requiring remand); *United Nat. Ins. Co. v. R & D Latex Corp.*, 141

F.3d 916, 919 (9th Cir. 1998) ("[M]eaningful appellate review for abuse of discretion is foreclosed when the district court fails to articulate its reasoning.").[18]

Here, the district court's jurisdictional ruling based on the undisputed facts presented raises a pure question of law, reviewed *de novo*. The court's thorough, 17-page Opinion and Order leaves no doubt as to the basis for the court's decision and is more than sufficient to allow for meaningful appellate review. Plaintiffs' claim (at 38–39) that the district court "fail[ed] to perform its judicial function" and instead acted as a "tool" of the Defendants is insulting, unsupported by any evidence, and contrary to prevailing circuit precedent. It should be rejected. *See Flying J Inc.*, 405 F.3d at 830 ("The district court's adoption of a party's

---

[18] Plaintiffs' reliance on the Third Circuit's *Bright* decision is similarly misplaced. The trial court's decision in that case was tainted by procedural errors not present here. In particular, the court (i) committed itself to dismissing plaintiff's claims before receiving plaintiff's response, (ii) commissioned defendants to draft its opinion, and (iii) entered defendants' draft opinion without giving plaintiff an opportunity to object or otherwise respond. *Bright v. Westmoreland Cty.*, 380 F.3d 729, 730–31 (3d Cir. 2004). The Third Circuit reversed. *Id.* at 732. While the Court took issue with the trial court's reliance on counsel to draft its opinion, the Court was particularly concerned with the procedure the trial court used to solicit that opinion—a procedure that not only committed the court to dismissal before ever reading plaintiff's response, but also deprived plaintiff of the opportunity to object or even respond to defendants' proposed opinion. *Id.* These same procedural errors aren't present here. The district court didn't commit itself to dismissal before receiving Plaintiffs' response, nor did it commission Defendants to author its opinion. Rather, the court wrote its own opinion after full briefing. While that opinion incorporates Defendants' legal analysis, the court only did so after receiving and reviewing the parties' briefs and determining that the analysis in Defendants' motion was sound. This is a far cry from *Bright*. *See McClam-Brown v. Boeing Co.*, 142 Fed. App'x 75, 76 n.1 (3d Cir. 2005) (distinguishing *Bright* on similar grounds).

proposed findings does not change the standard of review…. Though not made by the district judge himself, the findings are formally his; they are not to be rejected out-of-hand….").

## CONCLUSION

For these reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*/s/John Henry Rule*

John Henry Rule, OBA No. 7824
Christopher S. Thrutchley,
   OBA No. 15859
John D. Russell, OBA No. 13343
Justin A. Lollman, OBA No. 32051
**GableGotwals**
110 N. Elgin Ave., Ste 200
Tulsa, Oklahoma 74120-1495
Telephone: 918-595-4800

Amy M. Stipe, OBA No. 18361
**GableGotwals**
One Leadership Square, Ste 1500
211 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: 405-235-5500

**Counsel for Defendants-Appellees Simmons Foods, Inc. & Simmons Pet Food Inc.**

**-and-**

Denelda L. Richardson,
   OBA No. 20103
Randall E. Long, OBA No. 22216
Nicholas J. Foster, OBA No. 33081
**RHODES HEIRONYMUS JONES**
   **TUCKER & GABLE, PLLC**
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
Telephone: (918) 582-1173

**COUNSEL FOR DEFENDANTS-**
**APPELLEES CAAIR, JANET**
**WILKERSON, & DON WILKERSON**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), because the brief contains 12,880 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity Text A style font.

*/s/ John Henry Rule*
John Henry Rule


## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing: (1) all required privacy redactions have been made per 10th Cir. R. 25.5; (2) if required to file additional hard copies, that this ECF submission is an exact copy of those documents; and (3) the ECF submission have been scanned for viruses with the most recent version of a commercial virus scanning program, (Webroot, Version 9.0.29.62, August 27, 2021), and according to the program are free of viruses.

*/s/ John Henry Rule*
John Henry Rule

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2021, I electronically filed the foregoing using the Court's CM/ECF system, which will send notification of such filing to all counsel of record. I further certify that I mailed the foregoing via first-class mail, postage prepaid to the following:

Daniel Smolen,
Robert M. Blakemore,
SMOLEN & ROYTMAN
701 South Cincinnati Avenue
Tulsa, Oklahoma 74119

*Counsel for Plaintiffs-Appellants*

*/s/John Henry Rule*
John Henry Rule